IN THE MATTER OF THE ESTATE OF ELLEN JANE ACKERMAN, DECEASED.

FREDERICK G. POETER, SUBSTITUTED ADMINISTRATOR OF THE ESTATE OF ELLEN JANE ACKERMAN, DECEASED, PLAINTIFF CROSS-APPELLANT AND RESPONDENT, v. JAMES D. MOORE, DEFENDANT CROSS-RESPONDENT AND APPELLANT, AND MASSACHUSETTS BONDING AND INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 29, 1952—Decided December 4, 1952.

318

Before Judges McGᴇᴇʜᴀɴ, Bɪɢᴇʟᴏᴡ and Sᴍᴀʟʟᴇʏ.

*Mr. William J. Reimer* argued the cause for plaintiff cross-appellant and respondent (*Mr. H. Edward Neese,* attorney).

*Mr. James A. Major* argued the cause for defendant cross-respondent and appellant (*Messrs. Breslin & Breslin*, attorneys).

*Mr. George A. Brown* argued the cause for defendant-respondent (*Messrs. Morrison, Lloyd & Griggs*, attorneys).

The opinion of the court was delivered by

McGEEHAN, S. J. A. D.   In February 1951 Frederick G. Poeter, substituted administrator of the estate of Ellen Jane Ackerman, deceased, brought a proceeding in which he sought a surcharge against James D. Moore, the original administrator, for overpayments made in Moore's distribution to distributees; and on November 30, 1951 judgment was entered in the Bergen County Court, Probate Division, surcharging James D. Moore in the sum of $3,038.56, together with interest at the rate of 4% per annum from August 5, 1936, in the sum of $1,853.52, making a total of $4,892.08.   James D. Moore appeals on the ground that the court erred in making any surcharge against him, and the substituted administrator cross-appeals on the ground that the surcharge should be larger in amount.

Ellen Jane Ackerman died intestate on November 20, 1935.   The persons entitled to share in the estate fall into 14 groups, with each group entitled to share equally.   James D. Moore was appointed administrator *pendente lite* of the estate on December 2, 1935, and on June 23, 1936 he qualified as general administrator.   Without any order of the court Moore distributed $61,500 among the distributees between August 5, 1936 and December 31, 1936, and in this distribution, while he made some payment to each of the 14 groups, he paid in all to Group 9 a total of $9,681.48, to Group 13 a total of $8,322.89, and to Group 14 a total of $12,873.92; but he paid to no other group a total in excess of $6,500.   Again without an order of the court Moore, in February 1938, distributed $15,333.97; but in an apparent effort to rectify the overpayments already made to certain groups, this money was distributed entirely to the eight

groups which had each received less than $4,000 in the first distribution. Later, in August 1938, Moore made a further payment in distribution to Group 12 pursuant to an order of the Bergen County Orphans' Court dated August 4, 1938, which directed him to pay to Audrey Rembe (the only member of Group 12) "the sum of $4,835.36 out of the funds in his hands as such Administrator, which said payment is payment in full of the balance of the share of the said Audrey Rembe of the said Estate of Ellen Jane Ackerman, deceased, free of all payments of inheritance taxes." The payments thus made by Moore to Group 12 (the last payment being made pursuant to the order of the aforesaid court) totaled $9,783.52. Although the order of August 4, 1938, ordered Moore to continue as administrator until the further order of the court and to file a supplemental account on August 16, 1938 for all moneys received and disbursed by him from the date of his account (July 14, 1938) to and including August 15, 1938, no such supplemental account was put in evidence and the record does not show what amount Moore turned over to the substituted administrator, Frederick G. Poeter, who was appointed on August 16, 1938. On August 16, 1938 an order was entered discharging James D. Moore "from all further duties of his said office except accounting for and paying over the monies or assets received and undistributed by him by virtue of his said office" and the present substituted administrator, Frederick G. Poeter, was appointed.

Pursuant to an order of the court, all further payments in distribution made by the substituted administrator were made wholly to the groups which had not been overpaid, and thus no further payments were ever made to Groups 9, 12, 13 and 14. On November 10, 1950 the court ordered distribution of the balance remaining in the hands of the substituted administrator, above necessary expenses, to be distributed wholly to the ten groups which had theretofore not been overpaid. Including the payments under this last order of distribution, each of these ten groups received total

payments of $7,885.92. The result is that Group 9 received $1,795.56 more, Group 12 received $1,797.50 more, Group 13 received $436.97 more, and Group 14 received $4,988 more than the other groups received.

In the proceeding brought by the substituted administrator to surcharge Moore, the original administrator, for the overpayments made by him, the substituted administrator sought to have the court fix $7,885.92, the total amount of payments received by each of the ten groups not overpaid, as the base figure for determining the amount of overpayments made by Moore to the four groups, namely, Groups 9, 12, 13 and 14. Thereafter the substituted administrator withdrew any claim for surcharge for overpayments made to Group 12, because the overpayment, if any, to that group was made pursuant to an order of the court; the withdrawal being made because of the concession by the substituted administrator that a representative cannot be held liable for an overpayment if the overpayment is made under an order of the court. *Cf.* 34 *C. J. S., Executors and Administrators,* § 504. The trial court, in determining whether overpayments had been made to Groups 9, 13 and 14, and if so the amount of such overpayments, used $9,835.36 which, by the court's computation, was the total amount paid to Group 12 pursuant to the order of August 4, 1938 (actually $9,783.52), as the base figure upon which overpayments should be figured, and thus found that the only group which was overpaid was Group 14. Based on this finding, the trial court entered the judgment under appeal, in which it surcharged Moore for the difference between the base figure used of $9,835.36 and the total amount received by Group 14 of $12,873.92, and also surcharged the original administrator with interest from August 5, 1936, at 4% per annum on this overpayment.

Moore argues first that no overpayment was proven. From the evidence adduced it is clear that Moore made substantial overpayments to certain groups in his first distribution; that knowing this to be so, he made his second dis-

tribution entirely to the eight groups which had received the least in the prior distribution; and that Moore knew the remaining assets of the estate, as shown by his account of July 21, 1938 (only one month before his discharge as administrator), even if liquidated at full value shown, would be insufficient to correct the overpayments already made by him to Groups 9, 13 and 14.

In the first intermediate account filed by Moore as administrator, which was dated January 10, 1938 and allowed on February 2, 1938, he included a schedule headed: "Showing Payments made on Account of Partial Distribution, as well as Inheritance Taxes Paid, as Assessed against the Respective Distributees," followed by a list of more than 50 names, with varying amounts set forth alongside these names. This schedule does show that $61,500 was distributed by Moore to the named persons, and in the amounts set forth therein, during the period between August 5, 1936 and December 31, 1936. Moore argues that, by virtue of the provisions of *R. S.* 3:10–18, the decree of February 2, 1938 allowing this account, and the decrees allowing his later accounts, are a bar to this proceeding to surcharge him for overpayments. We agree with the trial court that such decrees do not bar the proceeding. *R. S.* 3:10–18 specifically makes an exception in a case such as this of mistake in the account proven to the satisfaction of the court. In *Ely v. Norton*, 6 *N. J. L.* 187 (*Sup. Ct.* 1822), an overpayment to a distributee by an executor was specifically referred to as a "mistake." Voluntary payments to distributees, without an order of court authorizing them, are made by the representative at his own peril, and this is so even though the representative acts in good faith in making such payments. *McKnight's Executors v. Walsh*, 24 *N. J. Eq.* 498 (*E. & A.* 1873); 34 *C. J. S., Executors and Administrators*, § 503. If the representative makes an overpayment, it does not in any way diminish the amount of the estate which, in the eyes of the law, remains in his hands for distribution, and the representative will not be

permitted to credit himself with the excess. He must pay over such excess to the parties entitled thereto. A decree allowing a representative's account, in which he has credited himself with money paid to a distributee beyond his just proportion, furnishes no protection to the representative for making such overpayment. *In re Robertson,* 51 *App. Div.* 117, 64 *N. Y. S.* 385 (*App. Div.* 1900); *Smith v. Lambert,* 30 *Me.* 137; 34 *C. J. S., Executors and Administrators,* § 504.

The statute of limitations does not constitute a bar to the enforcement of surcharge for overpayment (*cf. Clark v. Freeman,* 121 *N. J. Eq.* 35 (*Ch.* 1936); nor does laches, in the absence of a showing that the fiduciary changed his position or was prejudiced by the delay in seeking to surcharge him. 6 *N. J. Practice* (*Clapp, Wills and Administration*), § 630. In this case Moore, before his discharge as administrator in August 1938, knew that he had made the overpayments and knew the persons to whom the overpayments were made, but he made no effort to recover the amount of the excess payments. Here laches is not a bar, because there was nothing to show that he was prejudiced in any way by the delay in seeking to surcharge him, or that his position had changed in the interim.

The original administrator and the substituted administrator both argue that the trial court erred in its finding that "the distributive share of a 1/14th interest in the Estate of Ellen Jane Ackerman was fixed by Court Order in the Rembe distribution"; and we agree. The court order referred to is the orphans' court order of August 4, 1938, which directed Moore, as administrator, to pay $4,835.36 "out of the funds in his hands as such administrator, which said payment is payment in full of the balance of the share of the said Audrey Rembe of the Estate * * * free of all payments of inheritance taxes." Audrey Rembe was the only member of Group 12, and with the payment made pursuant to this court order, received in all $9,783.52. This provision of the order of August 4, 1938 does not even

purport to fix the value of each 1/14th share in the estate. Further, the record is barren of any support for either the making of such an order for payment in full to one group, or the amount of payment provided therein.

Since provision has now been made for distribution of all the assets remaining in the hands of the substituted administrator, we think the amount of surcharge against Moore for overpayment should be computed in the following manner. The total amount paid to Group 12 should be disregarded in the present computation because payment thereof was made pursuant to an order of the court. The total amount already paid to or provided for the other 13 groups, namely, $109,737.49, should be divided by 13 to arrive at the amount each such group would have received in an equal distribution, namely, $8,441.34. Since Moore paid out to Group 9 a total of $9,681.48, he made an overpayment of $1,240.14, and since he paid out to Group 14 a total of $12,873.92, he made an overpayment of $4,432.58. Therefore, the surcharge against Moore should be $5,672.72, which should be distributed wholly to the 11 groups which were not overpaid, so that each of these groups will receive in all $8,441.34. We do not think that interest should be charged on the overpayments, because no proceeding was brought to surcharge until 1951, despite the fact that the present plaintiff, the substituted administrator, knew in August 1938 that Moore had made these overpayments and the orphans' court recognized that such overpayments had been made in its order of June 5, 1939, in which it ordered that the "substituted administrator distributed among the heirs and next of kin such money as he has available for distribution, in such manner and to such heirs as said substituted administrator deems advisable, in order to correct the present disproportionate distribution that has been made in said estate."

Judgment is reversed and the cause remanded for the entry of judgment in conformance with this opinion. Costs are awarded to the substituted administrator.